```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
PEARLIE M. MYLES

                        Plaintiff,             07-CV-0242

             v.                                 DECISION
                                                and ORDER
MICHAEL ASTRUE,
Commissioner of Social Security

                        Defendant.
_____
```

## INTRODUCTION

Plaintiff, Pearlie M. Myles ("Plaintiff"), brings this action pursuant to Title XVI of the Social Security Act, seeking review of the final decision of the Commissioner of Social Security ("Commissioner"), denying her application for Supplemental Security Income ("SSI"). Plaintiff specifically alleges that the decision of the Administrative Law Judge, Bruce R. Mazzarella ("ALJ"), that the Plaintiff was not disabled within the meaning of the Social Security Act, was not supported by substantial evidence in the record and was contrary to the applicable legal standards.

The Commissioner moves for judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(c) ("Rule 12(c)"), on the grounds that the ALJ's decision was supported by substantial evidence in the record. The Plaintiff opposes the Commissioner's motion, and cross-moves for judgement on the pleadings on the grounds that the ALJ's decision was erroneous. This court finds that the ALJ's decision was supported by substantial evidence in the record, and was in

accordance with the applicable legal standards.  Therefore, for the reasons set forth below, the Commissioner's motion for judgment on the pleadings is granted, and the Plaintiff's motion is denied.

## **BACKGROUND**

Plaintiff, a former assembly worker, beverage bottle inspector, and cashier, filed an application for SSI on June 19, 2003, claiming disability due to depression, suicide attempts, and cutting herself. (Transcript of Administrative Proceedings at 68-9, 78) (hereinafter "Tr."). Plaintiff's claim was initially denied on November 26, 2003. (Tr. at 27).  Plaintiff filed a timely request for a hearing on January 15, 2004, which was held in Buffalo, New York, on October 13, 2005, before ALJ Bruce R. Mazzarella. (Tr. At 17).

Plaintiff appeared, with counsel, and testified at the hearing on October 13, 2005, but became upset and was excused at the advice of her treating psychiatrist, Dr. Jin Soo Rhee. (Tr. at 17).  The hearing was reconvened on December 14, 2005.  The Plaintiff did not attend the subsequent hearing, but her fiancé, James R. Haas, appeared and testified on her behalf. Id. A vocational expert also testified at the hearing. Id.

In a decision dated January 17, 2006, the ALJ determined that the Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. at 17-25).  The ALJ's decision became the final decision of the Commissioner when the Social Security Appeals

Council denied further review on March 16, 2007. (Tr. at 5). The Plaintiff then filed this action.

## DISCUSSION

### I. Jurisdiction and Scope of Review

42 U.S.C. §405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. When considering these cases, this section directs the Court to accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938). The Court's scope of review is limited to whether or not the Commissioner's findings were supported by substantial evidence in the record, and whether the Commissioner employed the proper legal standards in evaluating the plaintiff's claim. See Monger v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding a reviewing Court does not try a benefits case *de novo*). The Court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F.Supp. 265, 267 (S.D. Tex. 1983) (citation omitted).

The Commissioner asserts that the ALJ's decision is supported by substantial evidence in the record and is in accordance with the applicable legal standards, and moves for judgment on the pleadings

pursuant to Rule 12 (c).  Under Rule 12 (c), Judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988).  If, after reviewing the record, the Court is convinced that "the plaintiff can prove no set of facts in support of [his] claim which would entitle [him] to relief," judgment on the pleadings may be appropriate. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  This Court finds, after reviewing the entire record, that the Commissioner's decision is supported by substantial evidence in the record, and is in accordance with the applicable legal standards.  Therefore, the Commissioner's motion for judgment on the pleadings is granted, and the Plaintiff's motion is denied.

**II. The Commissioner's decision to deny the Plaintiff benefits was supported by substantial evidence in the record.**

The ALJ found that the Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. at 25).  In his decision, the ALJ adhered to the required 5-step sequential analysis for evaluating Social Security disability benefits cases. (Tr. at 17-25).  The 5-step analysis requires the ALJ to consider the following:

> (1) Whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has a severe impairment which significantly limits her physical or mental ability to do basic work activities;

(3) if the claimant suffers a severe impairment, the ALJ considers whether the claimant has an impairment which is listed in Appendix 1, Subpart P, Regulation No. 4, if so, the claimant is presumed disabled;

(4) if not, the ALJ considers whether the impairment prevents the claimant from doing any past relevant work;

(5) if the claimant's impairments prevent her from doing past relevant work, if other work exists in significant numbers in the national economy that accommodates the claimant's residual functional capacity and vocational factors, the claimant is not disabled.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 416.920(a)(4)(i)-(v).

In this case, the ALJ found that (1) the Plaintiff has not engaged in substantial gainful activity since the alleged onset of disability; (2) the Plaintiff has the severe impairments: depression, anxiety, and personality disorder; (3) the Plaintiff's impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4; (4) the Plaintiff can perform her past relevant work as an assembler or an inspector, as her residual functional capacity[1] does not prevent her from performing the required work related activities. (Tr. at 24-25). As the ALJ determined that the Plaintiff can perform her past relevant work, he did not reach step 5 of the analysis. Thus,

---

[1] The ALJ determined that the Plaintiff does not have exertional, postural, or environmental limitations, but she does have moderate limitations in social functioning, working in close cooperation with others, and in concentration, persistence, and pace on complex tasks. The Plaintiff has no limitations in performing simple repetitive and routine tasks, but would not be suited to stressful work or work which requires frequent task changes. (Tr. at 25).

the ALJ found that the Plaintiff was not disabled within the meaning of the Social Security Act.

This Court holds that there is substantial evidence in the record to support the ALJ's decision that the Plaintiff can perform her past relevant work, and was not disabled withing the meaning of the Social Security Act.

A.  **<u>The ALJ's decision is supported by substantial medical evidence in the record.</u>**

The Plaintiff claims that the ALJ did not give proper weight to the opinion of Plaintiff's second treating psychiatrist, Dr. Jin Soo Rhee. (Plaintiff's brief at 6). Generally, a treating physician's opinion is given controlling weight where it is well-supported by medical evidence and is not inconsistent with other substantial evidence in the record. 20 C.F.R. § 416. 1527 (d)(2). In determining the weight given to a physician's medical opinion, the ALJ must consider the following factors: (1) the length, frequency, nature, and extent of the treatment relationship; (2) whether the opinion is supported by clinical and laboratory findings; (3) whether the opinion is consistent with the record as a whole; (4) whether the physician is specialized; and (5) any other relevant factors. 20 C.F.R. §416.1527 (d)(3)-(6).

In his opinion, the ALJ gave "greater weight" to the opinions of Plaintiff's first treating psychiatrist, Dr. Jannette Conde; social worker, Michael Parker; psychiatric consultant, Dr. Thomas Ryan, Ph.D.; and reviewing psychiatrist, Dr. George Burnett because

they were "consistent with each other and the medical record as a whole." (Tr. at 23). The ALJ found that Dr. Rhee's opinion was inconsistent with the other medical evidence in the record as a whole. Id. Additionally, the ALJ found that Dr. Rhee did not provide any opinions regarding the Plaintiff's ability to complete work related activities other than indicating a low Global Assessment of Functioning ("GAF") score. Id. This Court finds that the ALJ gave the proper weight to the opinions of Plaintiff's physicians, including Dr. Rhee, and that there was substantial medical evidence in the record for the ALJ to conclude that the Plaintiff was not disabled.

From May 2002-December 2003 Plaintiff received counseling at the Erie County Medical Center outpatient clinic with psychiatrist, Dr. Janette Conde, and social worker, Michael Parker, C.S.W. (Tr. 132-40, 171-83). Plaintiff reported anxiety, depression, and visual hallucinations, but denied suicidal ideation, or an intention to hurt herself or others. (Tr. at 139). Plaintiff told Dr. Conde and Mr. Parker that she was having legal problems due to a conflict with her co-workers. (Tr. at 137). Mr. Parker noted that the possibility for malingering was high because of the potential secondary gain from a lawsuit with her employer. (Tr. at 138).

Treatment notes indicate that Plaintiff attended her treatment sessions with her fiancé, Mr. Haas, and consistently looked at him before answering questions. (Tr. at 133-36). Dr. Conde questioned

whether the Plaintiff was looking for reassurance from Mr. Haas or whether she was acting. (Tr. at 136). When Mr. Haas was not present, Dr. Conde noted that Plaintiff seemed nervous about getting him back in the room. (Tr. at 132). Mr. Parker stated that Mr Haas was "fairly controlling," and that the Plaintiff was uncooperative with treatment and focused on having paperwork completed for her Social Security Claim. (Tr. at 173). Dr. Conde remarked that Plaintiff was overly dramatic, tearful, fidgety, restless, and had poor eye contact which tended to improve after the treatment sessions (Tr. at 134, 136).

Dr. Conde diagnosed Plaintiff with anxiety, depression, psychotic disorder, malingering, and dependency, and assessed a GAF of 65, indicating mild difficulty in social, occupational, or school functioning. (Tr. at 132, 174); Diagnostic and Statistical Manual of Mental Disorder-IV-TR, Mutiaxial Assessment (text rev. 2000 ed.). Dr. Conde prescribed Busbar and Trazodone, and later Effexor and Seroquel. (Tr. at 132, 134). She noted that because Plaintiff was uncooperative and vague, insight and judgment could not be assessed. (Tr. at 174). Plaintiff and Mr. Haas told Dr. Conde that she could not work, but Dr. Conde stated the Plaintiff would benefit from going out and feeling productive. Id.

On November 18, 2003, Dr. Thomas Ryan, Ph.D, examined the Plaintiff and completed a psychiatric evaluation. (Tr. at 141). Dr. Ryan stated that she was extremely resistive, immature, and

"looked to her boyfriend for support in the hope that he would answer the questions." (Tr. at 143). Plaintiff appeared terrified during the interview. Id. He noted that her eye contact was poor and her responses were circumstantial. Id. Dr. Ryan stated that her attention and concentration were impaired, she was a poor historian, her cognitive functioning was average, and insight and judgment were poor. (Tr. at 143-44). Dr. Ryan diagnosed her with major depression with psychotic features and posttraumatic stress disorder. (Tr. at 144). He assessed that she could perform simple, rote tasks, but would have difficulty learning new tasks. Id.

Dr. George Burnett completed a residual functional capacity assessment on November 25, 2003. Dr. Burnett opined that the Plaintiff had moderate limitations in understanding detailed instructions, maintaining attention and concentration, and maintaining a schedule. (Tr. at 148). He also assessed that she had moderate social limitations, including the ability to get along with co-workers, and moderate limitations in adapting to changes in the work setting. (Tr. at 149). He concluded that Plaintiff was able to understand simple instructions and perform repetitive tasks in a supportive environment. (Tr. at 164).

Plaintiff referred herself to Dr. Jin Soo Rhee after ending treatment with Dr. Conde and Mr. Parker in December 2003. (Tr. at 185). Dr. Rhee initially diagnosed Plaintiff with major depression with psychotic features and assessed a GAF score of 40-50,

indicating serious symptoms. (Tr. at 186). Treatment notes indicate that Mr. Haas accompanied Plaintiff to all of her appointments with Dr. Rhee, and Dr. Rhee noted on several occasions that the Plaintiff acted like a child in front of her boyfriend, she did not answer questions spontaneously, and seemed dependent on him. (See Tr. at 187-206). Mr. Haas often reported Plaintiff's symptoms to Dr. Rhee on her behalf. Id.

On March 4, 2004, Dr. Rhee noted that her affect seemed brighter and there was no evidence of acute dangerousness. (Tr. at 187). Later, Dr. Rhee reported that Plaintiff was experiencing visual and auditory hallucinations and scratching herself when she was anxious. (Tr. at 189). She admitted to cutting herself on occasion, but said that the voices did not tell her to harm other people. (Tr. at 190). Dr. Rhee noted, however, that her behavior seemed to be controlled and that she had support from her boyfriend. Id. Dr. Rhee also reported that she functioned well at home. (Tr. at 192). Dr. Rhee prescribed Seroquel, Effexor, Cymbalta, Remeron, Abilify, and Klonopin, but noted on several occasions that she stopped taking medications, or changed the dosages on her own. (Tr. at 187-196).

On October 22, 2005, following the Social Security Disability hearing on October 13, 2005, Plaintiff was admitted to the Niagara Falls Memorial Medical Center after she took approximately 10 Klonopin and superficially cut her wrist. (Tr. at 208). She was

given milieu therapy, supportive psychotherapy, and medication treatment, and showed significant improvement during her hospital stay. (Tr. at 208). She was released and referred back to Dr. Rhee. Id. Following her hospitalization, Dr. Rhee altered her medication regime by adding Lunesta, and stated that she answered questions without difficulty and there was no evidence of acute dangerousness. (Tr. at 206).

The ALJ concluded that the medical records and opinions of Dr. Conde, Mr. Parker, Dr. Ryan, and Dr. Burnett should be afforded greater weight because they were consistent with each other and the record as a whole. (Tr. at 23). He gave less weight to Dr. Rhee's opinion, because the GAF score he gave to the plaintiff was inconsistent with the opinions of Plaintiff's other treating physicians, and the record as a whole. Id. In addition, Dr. Rhee did not offer an opinion on the Plaintiff's ability to complete work related activities, except for the indication of a low GAF score on her initial visit. Id. The ALJ then considered the moderate limitations in social functioning, concentration, pace, persistence, and working in close cooperation with others, imposed by the Plaintiff's psychiatrists and the consulting physicians, as well as the opinions that she could consistently perform simple repetitive and routine tasks in an environment that was not stressful, together with the testimony of a Vocational Expert, and found that the Plaintiff's Residual Functional Capacity did not

prevent her from performing her past relevant work. (Tr. at 23-24). This Court finds that the ALJ gave the proper weight to the medical opinions in the record, and there was substantial evidence to support his decision that the Plaintiff could perform her past relevant work was not disabled within the meaning of the Social Security Act.

> B. The ALJ properly evaluated the testimony of the lay witness, Mr. Haas.

Plaintiff does not object to the ALJ's assessment of her credibility, but claims that the ALJ did not assess the credibility of Mr. Haas, the Plaintiff's fiancé, who testified at the second administrative hearing. (Plaintiff's brief at 8). The ALJ stated, in his opinion, that he considered the Plaintiff's subjective complaints, and he cited Mr. Haas's testimony when describing her symptomology. (Tr. at 21-23). The ALJ noted inconsistencies in the Plaintiff's testimony, and the testimony of Mr. Hass. (Tr. at 22). The ALJ also considered the evidence of malingering and exaggeration of symptoms for financial gain in his assessment of Plaintiff's credibility. After describing the Plaintiff's subjective complaints elicited from Mr. Haas's testimony, the ALJ stated that "the claimant appeared to rely so heavily on her fiancé at medical appointments that her treating sources were suspect of collusion, as well as her allegations of the severity of her symptomology." (Tr. at 22). While the ALJ did not specifically state whether Mr. Haas's testimony was credible, he considered this

testimony to make his assessment of the credibility of the Plaintiff's subjective complaints.  This Court finds that the ALJ properly considered the testimony of Mr Haas, in connection with the Plaintiff's testimony and the medical evidence in the record, and concluded that the Plaintiff's subjective complaints were not entirely credible.

## **CONCLUSION**

For the reasons set forth above, this Court finds that the Commissioner's decision to deny the Plaintiff benefits was supported by substantial evidence in the record.  Therefore, I grant the Commissioner's motion for judgment on the pleadings.  The Plaintiff's complaint is dismissed with prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**

                                               s/Michael A. Telesca
                                              MICHAEL A. TELESCA
                                  United States District Judge

Dated:   Rochester, New York
        March 24, 2009